BART M. DAVIS, IDAHO STATE BAR NO. 2696
UNITED STATES ATTORNEY
**ROBERT B. FIRPO, CALIFORNIA STATE BAR NO. 243991**
**ASSISTANT UNITED STATES ATTORNEY**
DISTRICT OF IDAHO
1290 WEST MYRTLE STREET, SUITE 500
BOISE, ID 83702
TELEPHONE: (208) 334-1211
E-MAIL: Robert.Firpo@usdoj.gov

Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

UNITED STATES OF AMERICA,

Plaintiff,

v.

JUSTIN METTLER and TAMMY METTLER,

Defendants.

Case No. ______________________

**COMPLAINT**

The United States files this Complaint on behalf of the U.S. Environmental Protection Agency (EPA) and hereby alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action under the Clean Water Act (CWA or Act) to address unlawful discharges of pollutants into the North Fork of the Salmon River by Defendants Justin and Tammy Mettler (Defendants or Mettlers). *See* 33 U.S.C. §§ 1311 (Effluent limitations); 1344 (Permits for dredged or fill material); 1319 (Enforcement). Specifically, the United States alleges that Defendants discharged pollutants, including dredged and/or fill material, to waters of

the United States adjoining Defendants' personal property along the North Fork of the Salmon River without first applying for and acquiring a permit as required by the CWA.

2. The United States seeks legal and equitable relief for the unlawful conduct, including injunctive relief and civil penalties as authorized by law. In addition, the United States seeks an Order requiring Defendants to: (1) remove the unauthorized fill material, (2) restore riparian habitat damaged by the unlawful discharges, (3) provide compensatory mitigation for damages and injuries to the affected waters of the United States at their own expense and under the direction of the EPA, and (4) pay civil penalties as provided in CWA Section 309(d), 33 U.S.C. § 1319(d).

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over the subject matter of this action pursuant to 33 U.S.C. § 1319(b), as well as 28 U.S.C. §§ 1331, 1345, and 1355.

4. Venue is proper in the District of Idaho because the Defendants reside in the district, the unlawful discharges of pollutants occurred in the district and impacted waters of this district, and the acts and omissions giving rise to the claims occurred in the district. *See* 28 U.S.C. § 1391. Pursuant to Local Civil Rule 3.1, venue is proper in the District's Eastern Division.

5. Notice of the commencement of this action has been provided to the State of Idaho in accordance with CWA Section 309(b), 33 U.S.C. § 1319(b).

**THE PARTIES**

6. Plaintiff United States is a sovereign nation acting on behalf of the EPA.

7. Upon information and belief, Defendants Justin Mettler and Tammy Mettler are adult residents of Clayton, Custer County, and North Fork, Lemhi County, Idaho. Defendants

own private property along the North Fork of the Salmon River where the unlawful discharges of pollutants occurred. Upon information and belief, Defendant Justin Mettler is and/or has been associated with construction companies, including Mettler Metal Works and/or Mettler Construction, and owns, controls, or has access to heavy equipment and machinery capable of discharging fill material into rivers and streams. Upon information and belief, Defendants performed, contracted for, controlled, and/or directed activities that discharged pollutants into the North Fork of the Salmon River without a CWA Section 404 authorization.

8. Defendants are "person(s)" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5), and at all times relevant to this Complaint, Defendants were responsible for the discharge of pollutants to waters of the United States along the North Fork of the Salmon River without the required CWA authorization.

## STATUTORY BACKGROUND

9. The CWA's purpose is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). In order to achieve that purpose, the CWA limits discharges of pollutants into navigable waters.

10. CWA Section 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant, including dredged or fill material, by any person from any point source to navigable waters unless that discharge is authorized pursuant to the CWA, including by a permit or other authorization under 33 U.S.C. §§ 1342 or 1344.

11. CWA Section 404(a), 33 U.S.C. § 1344(a), authorizes the Secretary of the Army, acting through the U.S. Army Corps of Engineers (USACE), to issue permits for the discharge of dredged or fill material into navigable waters at specified disposal sites after notice and opportunity for public hearings.

12. CWA Section 502(12), 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source." CWA Section 502(6), 33 U.S.C. § 1362(6), defines "pollutant" to include, among other things, dredged spoil, rock, sand, and cellar dirt.

13. CWA Section 502(7), 33 U.S.C. § 1362(7), defines "navigable waters" as "the waters of the United States, including the territorial seas."

14. 33 C.F.R. § 328.4(c) states that the United States' regulatory jurisdiction over "non-tidal waters of the United States," extends to "the ordinary high water mark" of those waters. The ordinary high water mark, in turn, is the "line on the shore established by the fluctuations of water and indicated by physical characteristics such as clear, natural line impressed on the bank, shelving, changes in the character of the soil, destruction of terrestrial vegetation, the presence of litter and debris, or other appropriate means that consider the characteristics of the surrounding area." *See* 33 C.F.R. § 328.3(c)(4).

15. CWA Section 502(14), 33 U.S.C. § 1362(14), defines "point source" to include "any discernible, confined and discrete conveyance . . . from which pollutants are or may be discharged." A truck, tractor, or other heavy equipment or machinery that discharges dredged or fill material into a navigable water is a point source under the CWA.

16. CWA Section 502(5), 33 U.S.C. § 1362(5), defines "person" to include "an individual, corporation, partnership, [or] association . . . . "

17. CWA Section 309(b), 33 U.S.C. § 1319(b), authorizes the commencement of a civil action for appropriate relief, including a permanent or temporary injunction, against any person who violates the CWA. 33 U.S.C. § 1319(d) authorizes the district court to impose civil penalties on any person who violates 33 U.S.C. § 1311 in the amount of $25,000 per day for each

violation. The EPA may seek civil penalties of up to $68,445 per day per violation of the CWA for violations after November 2, 2015, and assessed on or after January 8, 2025. *See* 40 C.F.R. § 19.4.

## GENERAL ALLEGATIONS

18. The location of the unlawful discharges at issue in this Complaint (aka "the Site") consists of two contiguous tax parcels in Lemhi County, Idaho. The tax parcels are denominated as follows: Lemhi County parcel numbers RP00141001002G and RP00141001002H. Upon information or belief, Defendants purchased the property underlying these parcels on or about June 3, 2021. The physical address of the property and the Site is 15 Silverleadstrail Lane, North Fork, Idaho.

19. Defendants currently own both tax parcels and the Site. Defendants also owned both parcels and the Site at the time of the unauthorized discharges at issue in this Complaint.

20. The Site and location of the unlawful discharges includes riverbank along the North Fork of the Salmon River. The North Fork of the Salmon River is a tributary to, and flows into, the main stem Salmon River approximately 0.4 miles downstream of the Site.

21. The Salmon River has been identified by USACE as a navigable water of the United States pursuant to Section 10 of the Rivers and Harbors Act of 1899, 33 U.S.C. § 403, from its confluence with the Snake River at River Mile 0 upstream to River Mile 259. Navigable waters of the United States under the River and Harbors Act are a subset of traditional navigable waters under the CWA, and thus the Salmon River is also a traditional navigable water. The confluence of the North Fork of the Salmon River and the mainstem of the Salmon River is at approximately River Mile 237. The North Fork of the Salmon River maintains a continuous and perennial flow and is a relatively permanent, standing or continuously flowing body of water connected to a traditional navigable water.

22. The main stem of the Salmon River is a "navigable water" and "waters of the United States" for the purposes of the CWA and enforcement of the unlawful discharges at issue in this Complaint. The North Fork of the Salmon River is a "navigable water" and "waters of the United States" for the purposes of the CWA and enforcement of the unlawful discharges at issue in this Complaint.

23. The North Fork of the Salmon River provides spawning and rearing habitat for spring and summer runs of Chinook salmon, steelhead trout, and bull trout, all of which are listed as threatened under the Endangered Species Act (ESA). *See* 16 U.S.C. § 1531, *et seq*. The North Fork of the Salmon River is designated as Critical Habitat for Chinook salmon, steelhead trout, and bull trout.

24. After purchasing the Site and the underlying tax parcels and property in June 2021, Defendants and/or persons acting on their behalf removed all riparian vegetation from the west bank of the North Fork of the Salmon River abutting the Site and conducted other work on Defendants' property. As part of those efforts, Defendants and/or persons acting on their behalf used earthmoving equipment to bring fill and/or dredged material, including quarried rock and river rock from an off-site location, onto Defendants' property where it was staged for later use.

25. Thereafter, and on information and belief sometime between September 15, 2021 and September 30, 2021, Defendants and/or persons acting on their behalf used earthmoving equipment, including a dump truck, and/or tractors and other heavy equipment, to discharge riprap and/or non-native rock to the North Fork of the Salmon River below the ordinary high water mark. Photographs taken after completion of the work show that Defendants' work significantly altered the bank of the North Fork of the Salmon River, including regrading the

bank, steepening the bank, and discharging rock and other fill material below the ordinary high water mark of the North Fork of the Salmon River.

26. The State of Idaho Department of Fish and Game was the first to report the unauthorized discharge to federal authorities on September 30, 2021.

27. Defendants did not obtain a CWA Section 404 authorization from the USACE before discharging or authorizing the discharge of rock or other fill material to the North Fork of the Salmon River below the ordinary high water mark at the Site as required by law.

28. The unauthorized and unpermitted discharges to the North Fork of the Salmon River occurred within a large salmon habitat restoration project previously implemented by the Idaho Department of Fish and Game and authorized by the USACE. Defendants' unauthorized discharges of rock and other fill material into the North Fork of the Salmon River simplified the banks, removed the buried root wad features and the channel spanning log weirs implemented in the restoration project, and eliminated approximately $30,000 worth of plantings.

29. On November 21, 2023, USACE sent Defendants a letter notifying them of the unauthorized discharges into the North Fork of the Salmon River and seeking information about their role in the unlawful conduct. After Defendants failed to provide a timely response, USACE referred the matter to the EPA for enforcement action.

30. On January 4, 2024, the EPA sent Defendants a letter about the unauthorized discharges and therein sought additional information. Though the EPA and Defendants have communicated through counsel since that time, the matter has not been resolved and ultimately necessitated the filing of this action.

31. As of the filing of this Complaint, Defendants have not taken corrective action and/or provided compensatory mitigation for the direct and temporal losses resulting from their

conduct to (a) waters of the United States, (b) critical habitat for salmon, steelhead and bull trout, and (c) Idaho Department of Fish and Game restoration projects permitted by USACE.

**CLAIM FOR RELIEF #1:**
**UNAUTHORIZED DISCHARGES OF DREDGED OR FILL MATERIAL**
**(33 U.S.C. § 1311(a))**

32. The United States repeats and realleges the allegations in Paragraphs 1 through 31.

33. Defendants discharged and/or directed or otherwise controlled the discharge of dredged or fill material to the North Fork of the Salmon River below the ordinary high water mark at the Site.

34. The dredged or fill material unlawfully discharged into the North Fork of the Salmon River included, among other things, quarried rock and river rock/riprap rock from an off-site location, all of which constitute "pollutants" as defined in CWA Section 502(6), 33 U.S.C. § 1362(6).

35. The earthmoving equipment that Defendants used and/or directed or contracted to be used to discharge the dredged or fill material at the Site and to the North Fork of the Salmon River constitute "point sources" as defined in CWA Section 502(14), 33 U.S.C. § 1362(14).

36. Defendants did not seek or obtain a CWA Section 404 authorization or permit from USACE before discharging or directing the discharge of dredged and/or fill material to the North Fork of the Salmon River at the Site as required by CWA Section 301(a), 33 U.S.C. § 1311(a).

37. Because Defendants failed to seek authorization to discharge pollutants into the North Fork of the Salmon River as required by law, USACE was unable to consult with the U.S. Fish and Wildlife Service (USFWS) and the National Marine Fisheries Service (NMFS) about the project's impacts to threatened salmon, steelhead, and bull trout as required by Section 7 of

the ESA. Neither was USACE able to coordinate in advance with the Idaho Department of Fish and Game, which had previously conducted authorized salmon habitat restoration in this area. In addition, Defendants' failure to seek authorization from USACE under the CWA or otherwise notify USACE of the discharges in advance prevented USACE from providing notice and an opportunity to comment to the public regarding the impacts of the discharges on the North Fork of the Salmon River, the Salmon River downstream, and critical habitat for species listed as threatened under the ESA.

38. The discharges of dredged or fill material at the Site and to the North Fork of the Salmon River violated and continue to violate CWA Section 301(a), 33 U.S.C. § 1311(a).

39. The violations of the CWA have caused ongoing damage and injury to the aquatic environment of the North Fork of the Salmon River and to previous restoration projects implemented by the State of Idaho Department of Fish and Game and permitted by USACE.

40. Holding Defendants liable for the violations of the CWA is necessary to prevent further injuries to the North Fork of the Salmon River and the Salmon River downstream.

41. Each day that the dredged or fill material remains in the waters of the North Fork of the Salmon River at the Site or downstream of the Site constitutes a separate violation of 33 U.S.C. § 1311(a).

42. Unless this Court compels Defendants to restore the affected waters to their pre-fill condition, Defendants are likely to allow dredged or fill material to remain in the North Fork of the Salmon River in violation of CWA Section 301, 33 U.S.C. § 1311.

## PRAYER FOR RELIEF

Plaintiff United States respectfully requests that this Court order the following relief:

A. Permanently enjoin Defendants from discharging dredged or fill material or other pollutants into any water of the United States except in compliance with the CWA;

B. Order Defendants to undertake measures to completely restore the waters of the United States at the Site along the North Fork of the Salmon River to their pre-discharge condition at Defendants' own expense and under the direction of EPA, and to provide mitigation for injuries to such waters;

C. Order Defendants to pay civil penalties, pursuant to CWA Section 309(d), 33 U.S.C. § 1319(d), for every day they have violated the CWA Section 301(a);

D. Award the United States costs and disbursements, including expert witness fees, incurred in this action; and

E. Grant such other relief as the Court may deem just and proper.

Dated this 14th of September, 2026.

BART M. DAVIS
UNITED STATES ATTORNEY
By:

/s/ Robert B. Firpo
ROBERT B. FIRPO
Assistant United States Attorney